**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| WILLIAM STALLINGS<br>and his wife CAROL LEE STALLINGS | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 3:12CV-724-JGH<br>) |
| GEORGIA-PACIFIC CORPORATION, *et al.* | )<br>) |
| Defendants | ) |

**GENERAL ELECTRIC COMPANY'S RESPONSE**
**IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

As a manufacturer of turbines for the United States Navy, the General Electric Company ("GE") removed this matter based upon the federal officer removal statute, 28 U.S.C. §1442(a)(1). In their Motion to Remand [DN 8], plaintiffs mischaracterize the legal standard for federal officer removal and attempt to convince this Court that GE must prove and win its federal contractor defense at the removal stage of the litigation. Plaintiffs are wrong on both counts.

Plaintiffs ignore and seek to obscure these two well-established determinations made by Congress and recognized by courts throughout the United States:

1. The federal officer removal statute is an exception to the general principle that defendants cannot remove lawsuits to federal court on the basis of a federal defense; and

2. A defendant, such as GE, entitled to assert the federal contractor defense need only demonstrate a colorable claim of the defense, and need not prove and win its case at the removal stage of the litigation.

*Hagen v. Benjamin Foster Co., et al.,* 739 F. Supp. 2d 770, 777-83, (E.D. Pa. 2010). [1]

---

[1] The Judicial Panel on Multidistrict Litigation has commented that "judges presiding over [asbestos cases] …will almost certainly find useful guidance in the many substantive and thoughtful rulings that have been issued during the lengthy course of the multidistrict proceedings." More specifically, the MDL Panel identified a "non-exhaustive list of such rulings" in footnote 5 which includes *Hagen. See In re: Asbestos Prods. Liab. Litig. (No. VI),* 830 F.Supp.2d 1377, 1379, n. 5 (J.P.M.L. 2011). As such, this Court should look to *Hagen* in adjudicating plaintiffs' Motion to Remand.

Despite plaintiffs' assertions to the contrary, these are the two discrete legal issues for this Court to address at this stage of the proceeding. As demonstrated below, GE is entitled to proceed in this Court, which should deny plaintiffs' Motion to Remand.

## BACKGROUND AND PROCEDURAL HISTORY

This is an asbestos personal injury lawsuit. Plaintiffs, William Stallings and his wife Carol Lee Stallings, filed their Complaint, Civil Action No. 12-CI-04767, in the Thirteenth Division of the Circuit Court of Jefferson County, Kentucky on or about September 6, 2012 against GE and nine other defendants. GE received service of the Complaint on September 7, 2012. The allegations against GE are based on theories of strict liability and negligence. [DN 1, Exhibit 2: Complaint at ¶¶ 20-23]. The Complaint does not identify any particular GE product, nor does it contain any allegations of where or when Mr. Stallings was exposed to any asbestos-containing product manufactured by GE.

GE filed its Answer to the Complaint and served discovery requests to plaintiffs on September 27, 2012. GE's discovery requests asked plaintiffs to identify in detail the circumstances and context of Mr. Stallings' alleged exposure to asbestos from GE products. On October 25, 2012, plaintiffs served their responses to GE's discovery requests. [DN 1, Exhibit 1: Plaintiffs' Answers and Responses to General Electric Company's First Set of Interrogatories, Request for Production of Documents, and Request for Admissions]. In response to Interrogatory No. 1, plaintiffs alleged *for the first time* that Mr. Stallings was exposed to asbestos from a variety of GE products, including Navy steam turbines while serving in the U.S. Navy as a boiler tender aboard the *U.S.S. Waller* from 1955 until 1959. *Id.* at p.1.

Plaintiffs' discovery responses were the first notice to GE that Mr. Stallings claims to have been exposed to asbestos from GE products while serving in the U.S. Navy. GE, therefore, timely filed its Notice of Removal on November 1, 2012, *see* [DN 1], within thirty (30) days

2

from the date of receipt of the "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" in accordance with 28 U.S.C. §1446(b)(3).

## LEGAL STANDARD FOR FEDERAL OFFICER REMOVAL

Citing to cases based on other removal statutes,[2] plaintiffs claim that GE "must remove all doubt this extraordinary procedure is proper" and "[i]f there are any doubts regarding federal jurisdiction and whether removal is proper, they should be resolved in favor of remanding the case to state court." [DN 8, p. 4]. What plaintiffs attempt to finesse – if not outright ignore – is the fact that "unlike the analysis undertaken with respect to other removal statutes, … the Court must broadly construe Defendants' ability to remove under Section 1442(a)(1) as to avoid frustrating its policy objective of 'hav[ing] the validity of the defense of official immunity tried in a federal court' by applying a 'narrow, grudging interpretation.'" *Hagen,* 739 F. Supp. 2d at 777 (citing *Willingham v. Morgan,* 395 U.S. 402, 407 (1969)); *see Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1262 (3d Cir. 1994) (distinguishing the general removal standard from the standard applicable in cases removed pursuant to Section 1442(a)).

The federal officer removal statute is an exception to the general principle that defendants cannot remove lawsuits to federal court on the basis of a federal defense. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law."); *Mesa v. California*, 489 U.S. 121, 136 (1989) (explaining that the federal officer removal statute is a "pure jurisdictional statute . . . [that] grant[s] district court jurisdiction over cases in which a federal officer is a defendant").

---

[2] Tellingly, the cases cited in plaintiffs' Motion to Remand at pages 3-4 and referenced in footnotes 3, 4, 6-9 *do not* pertain to, or even address, the federal officer removal statute, 28 U.S.C. §1442(a)(1).

Congress' passage last year of the Removal Clarification Act of 2011 underscores the expansive scope of federal officer removal. *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545. While federal officer removal was previously authorized when the suit was "for" an act under color of office, Congress revised the statute to provide for removal of any action "for *or relating to* any act under color of such office." *Id.* (emphasis added). This change was expressly "intended to broaden the universe of acts that enable federal officers to remove to federal court." H.R. REP. No. 112-17, pt. 1, at 6 (2011). The additional phrase "or relating to" can only be deemed more expansive than the pre-amendment language, allowing removal where the challenged action has some connection or reference to the fulfillment of federal duties.

The Removal Clarification Act of 2011 also is significant because it granted, for the first time, the right to appeal an order remanding a case removed pursuant to section Section 1442. *See* 28 U.S.C. §1447(d) ("[A]n order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."). Before that amendment, remand orders were not appealable, allowing district courts to remand similar cases without review. The addition of appeal rights "ensure[s] that any individual drawn into a State legal proceeding based on that individual's status as a Federal officer has the right to remove the proceeding to a U.S. district court for adjudication." H.R. REP. No. 112-17, at 1-2. Congress obviously does not share plaintiffs' restrictive view of federal officer removal.  Just last week, in the first case decided by a federal court of appeals since such remand orders became appealable, the Seventh Circuit rejected all the arguments that plaintiffs urge upon this Court for remand.  *Ruppel v. CBS, Corp.*, No. 12-2236, 2012 WL 5971242 (7th Cir. Nov. 30, 2012).

Amongst other parties, the federal officer removal statute allows the following class of defendants to remove a state action to federal court: The United States or any agency thereof or

any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue. 28 U.S.C. § 1442(a)(1).  To establish subject matter jurisdiction under Section 1442(a)(1), an individual defendant must show: (1) it is a person within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct acting under a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.  *Mesa,* 489 U.S. at 124-25, 129-31, 134-35; *Bennett v. MIS Corp.,* 607 F.3d 1076, 1085 (6th Cir. 2010); Hagen*,* 739 F. Supp. 2d at 776.

With respect to the third prong of the federal officer removal statute set out immediately above, the applicable colorable defense that GE raises is the federal contractor defense which, based on principles of preemption, cloaks federal contractors like GE from ordinary state law liability.  It applies where: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle v. United Technologies Corp.,* 487 U.S. 500, 512 (1988).  "And because the government contractor defense is the basis for invoking this Court's jurisdiction in this suit against non-government entities who furnished equipment to the military, resolution of Plaintiff's motion to remand effectively turns on how colorable Defendants' federal defense really is."  *Hagen,* 739 F.Supp.2d at 776.  Thus, although this Court must "consider[] each element required for removal separately, its analysis begins (and essentially ends) with the colorable defense requirement."  *Id.*  Moreover, "the Court's task … is to determine whether Defendants have a colorable claim that the government contractor defense shields them from

5

liability to Plaintiff…. *[T]his inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants, and does not address the merits of the defense.*" *Id.* at 784-785 (emphasis added). This Court's subject matter jurisdiction is "not dependent upon the success of the government contractor defense...." Rather, GE need only assert a "colorable" federal defense at the time of removal, which it has done. *Bennett,* 607 F.3d at 1084 (citing to *Mesa,* 489 U.S. at 129).

## ARGUMENT

### I.  GE HAS MET THE REQUIREMENTS OF SECTION 1442(A)(1) AND JURISDICTION IS PROPER IN THIS COURT.

As set out above, to establish subject matter jurisdiction under Section 1442(a)(1), GE must show: (1) it is a person within the meaning of the statute; (2) the plaintiff's claims are based upon GE's conduct acting under a federal office; (3) GE raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. *Mesa,* 489 U.S. at 124-25, 129-31, 134-35; *Bennett,* 607 F.3d at 1085; Hagen, 739 F. Supp. 2d at 776.

With respect to the requisite proof necessary to support removal under Section 1442(a)(1), plaintiffs argue in their Motion to Remand that GE provided no evidence that it is entitled to removal. [DN 8, pp. 11-12]. However, "[n]othing in the statute imposes such a draconian obligation at the moment of removal, and federal courts have routinely allowed defendants removing on the basis of federal officer jurisdiction either to make an evidentiary showing post-removal or to rely on factual allegations in the notice of removal untethered to specific evidentiary proof." *Morgan v. Bill Vann Co., Inc*., No. 2:11-00535-WS-B, 2011 U.S. Dist. LEXIS 140394 (S.D. Ala. Dec. 6, 2011) (citing to *Hagen,* 739 F. Supp. 2d at 778 n. 8)

("These facts may be cited in the answer, the notice of removal or in the response to a motion to remand.").

GE more than meets this requirement with plaintiffs' discovery responses and the attached declarations of Lawrence S. Betts, M.D. (Exhibit 1); David Hobson (Exhibit 2), and Ben J. Lehman (Exhibit 3).  These declarations are the same or substantially similar to the declarations recently relied on by other federal courts in sustaining removal under the federal officer removal statute.  *Vedros v. Northrop Grumman Shipbuilding, Inc.,* No. 2:11-67281-ER, 2012 U.S. Dist. LEXIS 108871 (E.D. Pa. Aug. 1, 2012); *Morgan*, No. 2:11-00535-WS-B, 2011 U.S. Dist. LEXIS 140394 (S.D. Ala. Dec. 6, 2011); *Hagen*, 739 F. Supp. 2d at 774-75.

### A.  GE Is A Person Within The Meaning of Section 1442(a)(1).

With respect to the first prong, it is well-settled that GE is a "person" under Section 1442(a)(1).  *Isaacson v. Dow Chem. Co.,* 517 F.3d 129, 135 (2d Cir. 2008) (The text of Section 1442 covers "non-natural entities, such as the United States and its agencies, which suggests that interpreting 'person' to include corporations is consistent with the statutory scheme."); *see also, Pollitt v. Health Care Serv. Corp.,* 558 F.3d 615, 616 (7th Cir. 2000) (per curiam).

### B.  GE Has Established That It "Acted Under" the Color of Federal Authority.

To satisfy the second prong, GE must show that it "acted under" an officer's "direct orders or comprehensive and detailed regulations."  *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 1144, 1152 (D. Colo. 2002) (*citing Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992)).  The term "acted under" should be liberally construed. *Watson v. Phillip Morris Cos.,* 551 U.S. 142, 147, 152 (2007) ("`Acting under' must involve an effort to *assist,* or to help *carry out,* the federal superior's duties or tasks.") . (emphasis in original).

GE's alleged actions at issue in this matter occurred under the direct and detailed control of a federal agency – the United States Navy – as well as several Navy officers and Navy-employed civilians, all acting under the command of the Secretary of the Navy. *See* Exhibit 2: Hobson Decl. at ¶¶ 4-8; Exhibit 3: Lehman Decl. at ¶¶3-8**.** These declarations establish that Navy officers and Navy-employed civilians exercised direct control over the design and manufacture of the Navy turbines, as well as control over all information affixed to that equipment supplied to the Navy.  *See* Exhibit 2: Hobson Decl. at ¶ 21; Exhibit 3: Lehman Decl. at ¶¶6-9.  Finally, the Navy turbines were subjected to extensive testing and inspection by the Navy as a prerequisite to its approval, acceptance, and use of those turbines aboard Navy ships. *See* Exhibit 2: Hobson Decl. at ¶¶ 11-14**.**  In sum, virtually no aspect of the design and manufacture of the Navy turbines at issue escaped the close control of the Navy and its officers and employees.  *See* Exhibit 2: Hobson Decl. at ¶ 5**.**  These undisputed facts establish that GE was "acting under" the Navy and its officers in its design, manufacture, and supply of Navy turbines.

Federal courts have repeatedly found this evidence, which demonstrates the active and direct control by the Navy over GE with respect to every aspect of the design, manufacture, and delivery of its turbines, including the Navy's absolute control over any warnings permitted to be placed on a GE turbine, sufficient to demonstrate that GE was acting under the direction of a federal officer.  *See e.g, Vedros,* No. 2:11-67281-ER, 2012 U.S. Dist. LEXIS 108871 (evidence set forth in the affidavits submitted by GE was sufficient to satisfy all of the requirements for removal under Section1442(a)(1)); *Morgan*, No. 2:11-00535-WS-B, 2011 U.S. Dist. LEXIS 140394 (discussing sufficiency of affidavits and declarations submitted by GE); *Hagen,* 739 F. Supp. 2d at 774-75 (discussing sufficiency of affidavits submitted by GE to establish the subject

matter jurisdiction predicate under Section 1442(a)(1)).  GE has, therefore, met its burden with respect to the "acting under" requirement for removal and federal jurisdiction.

### C.  GE Has Raised A Colorable Federal Defense.

Abundant federal authority also makes clear that GE has raised a colorable federal contractor defense.  Indeed, federal courts have granted summary judgment for GE on this precise issue under a very similar fact pattern.  *Faddish v. General Electric, Co., et al.*, 2010 WL 4146108 (E.D. Pa. 2010).

In *Faddish*, the plaintiff served aboard the *USS Essex* from 1958 through 1961 and alleged exposure to Navy turbines manufactured by GE.  GE asserted the federal contractor defense claiming that its state law duty to warn about harms associated with its product was superseded by the United States Government's directives.  2010 WL 4146108 at *1  Relying on the same or substantially similar declarations from Lawrence S. Betts, M.D., David Hobson, and Ben J. Lehman that are attached hereto, Judge Robreno found that GE established that the "United States Navy was intimately involved with both the labeling of equipment on its ships and the manufacturer-produced information that was allowed to accompany a product," (*Id.* at * 8) "that the United States Navy 'exercised its discretion' regarding the content of warnings that could be placed on GE turbines, and that GE complied with the applicable military specification," (*Id.* at * 9)  and that "the United States Navy possessed state-of-the-art knowledge of the hazards of asbestos, thereby absolving GE of its duty to warn."  *Id.*  Given the above information, Judge Robreno found that there was no genuine issue of material fact and summary judgment in favor of GE was appropriate.  *Id.*; *see also Briggs v. Air Liquid Systems Corp.*, 2012 WL 975875  (E.D. Pa. 2012) (granting GE's motion for summary judgment founded upon federal contractor defense based on similar affidavits and materials relied upon in *Faddish.*).

If GE was entitled to summary judgment based on the federal contractor defense there it has certainly raised a colorable claim to that defense sufficient to support removal here.  Here, unlike in *Faddish* and *Briggs*, GE has a much lesser burden.  GE must only raise a colorable claim to the defense.  "A defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, ***viewed in the light most favorable to the defendant***, would establish a complete defense at trial."  *Hagen*, 739 F.Supp.2d at 783. (emphasis added).  GE need not prove and prevail on its defense at the removal stage of litigation. *Willingham*, 395 U.S. at 407.  Rather, the "defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *see also Hagen*, 739 F.Supp.2d at 781 (recognizing "the Supreme Court's clear teaching that a colorable defense need not be proven at this stage of the litigation due to the broad removal right the statute creates").   If GE can establish its federal contractor defense as a matter of law as it did in *Faddish* and *Briggs*, GE can certainly establish that its defense is at least "colorable" for purposes of removal in this matter.

Although different courts have couched the quantum of proof necessary to establish a "colorable federal defense" differently, they have overwhelmingly framed it as a modest burden for removing defendants.  *See e.g., Hagen*, 739 F. Supp.2d at 783; *Corley v. Long-Lewis, Inc.*, 688 F. Supp.2d 1315, 1332 (N.D.Ala. 2010) (to satisfy "colorable defense" requirement, "[a]ll a removing defendant needs to do is to make a showing that his federal defense is not without foundation and made in good faith") (citation and internal quotation marks omitted);  *McGee v. Arkel Int'l, LLC*, 716 F.Supp.2d 572, 578 (S.D.Tex. 2009) (to satisfy this prong, the removing defendant "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims").

10

The third prong of the federal officer removal standard is satisfied because GE has raised a colorable federal law based defense to this action, *i.e.*, federal contractor immunity from liability for injuries arising from any exposure to asbestos attributable to its Navy equipment. *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).  More specifically, GE can make a colorable showing in this case that meets the three-part *Boyle* test that requires that "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Id.* at 512.  There is sufficient testimony regarding each of these elements in the declarations submitted by GE.

1. *Boyle Test – The Navy provided GE with reasonably precise specifications.*

The evidence from the declarants in this case demonstrate that the Navy provided GE with precise and detailed specifications that governed every aspect of the design, manufacture and delivery of the GE turbines at issue in this action, including any warnings or written information that could accompany the turbines.  *See* Exhibit 2: Hobson Decl. at ¶7 (noting that the Navy Department administered these contracts through Navy Sea Systems Command (NAVSEA).  NAVSEA personnel exclusively developed ship designs and plans, as well as comprehensive and detailed guidelines and specifications for the equipment on U.S. Navy ships. NAVSEA officers supervised, enforced and approved GE's compliance with the plans and specifications for its turbines.); Exhibit 3: Lehman Decl. at ¶¶ 6-7 (stating that the U.S. Navy was intimately involved and had final approval of all technical and engineering drawings, operating manuals and safety, or hazard information that accompanied a piece of equipment. The U.S. Navy determined the nature of hazards subject to any precautionary labeling and the content of any such labeling.)

Courts have held that similar affidavits provided by GE were sufficient to support *Boyle's* requirement of "reasonably precise specifications." *See e.g., Shepherd v. Air & Liquid Sys. Corp.*, *et al.,* C.A. No. 12-143, 2012 U.S. Dist. LEXIS 166735 at *79-84 (D. R.I. Nov. 20, 2012) (collecting recent cases holding that the Betts, Hobson, and Lehman declarations are sufficient to establish a colorable federal contractor defense); *Morgan*, 2011 WL 6056083 at *6 (holding that GE's affidavits in support of its notice of removal and opposition are "evidence … adequate on [their] face to make a plausible showing that the United States approved reasonably precise specifications in the design of removing defendants' turbines to be installed on Navy ships"); *see also Winters*, 149 F.3d at 400; and *Pantalone*, 576 F.Supp.2d at 331.  Moreover, as previously noted, federal courts evaluating affidavits such as the ones submitted by GE in this matter have found similar affidavits sufficient to grant summary judgment with respect to a plaintiff's state law failure to warn claims.  *See e.g., Faddish*, 2010 WL 4143108 at *4.

### 2. *Boyle Test – GE's turbines conformed with the Navy's specifications.*

Conformity with the specifications, the second prong of the *Boyle* test, may be established by the acceptance and use of the item by the Navy.  *See Lewis v. Babcock Industries, Inc.*, 985 F.2d 83, 86 (2nd Cir. 1993).  Here, it is uncontroverted that each turbine manufactured by GE for the United States Navy underwent an acceptance trial and was only accepted by the Navy after deficiencies were corrected.  *See* Exhibit 2: Hobson Decl. at ¶17.  Accordingly, the evidence advanced by GE satisfies the second prong of *Boyle*.  *See Morgan*, 2011 WL 6056083 at *6 ("Defendants' evidence shows that the … GE turbines were extensively tested by the Navy and were not accepted for installation on the vessels unless and until they were deemed to conform fully with military specifications.  The rigorous testing procedures described in defendants' evidentiary submission certainly amount to a plausible showing that the turbine equipment furnished by … General Electric to Navy vessels on which [plaintiff] worked in the

1950s was subject to extensive Navy testing for conformity with military specifications, and was not accepted unless it was fully compliant with same.")

       3.   *Boyle Test – The Navy was aware of the alleged danger of asbestos exposure.*

In order to satisfy the third and final prong of the *Boyle* test, GE need only present evidence demonstrating that it warned the United States about the dangers in the use of its equipment that were known to GE,  but **not** the United States.  *Boyle*, 487 U.S. at 512. There were **no** dangers about the use of asbestos-containing insulation on turbines that were known to GE, but not the United States.  *See* Ex. 1: Betts Decl. at ¶33)[3]; *see also Morgan*, 2011 WL 6056083 at *6  (holding that the declarations submitted by GE "constitute[] a plausible showing that the U.S. Navy was already familiar with the health risks associated with using asbestos containing materials in the turbines it installed on its ships as of the 1940s and 1950s, such that … General Electric [was] under no obligation to apprise the Navy of those risks as a prerequisite for protection under the government contractor defense."); *In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 99 (2nd Cir. 2008) (third element of *Boyle* is satisfied if "the government did not need the warnings because it already possessed that information."); *Hagen*, 739 F. Supp.2d at 784 ("the defense does not require the contractor to warn the government where the government knew as much or more than the defendant contractor about the hazards of the … product") (citation and internal quotation marks omitted).

**D.  GE Has Demonstrated A Causal Nexus Between The Federal Direction And The Conduct At Issue.**

As for the fourth prong, plaintiffs allege that Mr. Stallings' asbestos-related illness was caused, in whole or in part, by exposure to asbestos-containing components used in connection

---

[3] GE has also advanced compelling evidence that the Navy dictated what warnings could be provided by GE and dictated the content of any warning GE was permitted to provide.  *See* Exhibit 3: Lehman Decl. at ¶¶ 6-9.

with the Navy turbines manufactured and supplied by GE.  As set out above, any use of asbestos in conjunction with such equipment was the ***direct result*** of the Navy's own detailed plans, military specifications and/or regulations.  Thus, the existence of a causal nexus between GE's actions under color of its federal office and plaintiffs' claims is firmly established based on plaintiffs' own discovery responses.

It bears emphasizing that "[t]he causal nexus requirement does not establish a stringent standard."  *Carter v. Monsanto Co.*, 635 F. Supp.2d 479, 489 (S.D. W.Va. 2009); *see also Hagen*, 739 F. Supp.2d at 785 ("resolving the causal nexus requirement is not difficult in light of the Court's colorability determination").  In fact, "[a]ll a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy." *Corley*, 688 F. Supp.2d at 1335; *see also Holdren v. Buffalo Pumps, Inc.*, 614 F.Supp.2d 129, 149 (2009) ("A removing defendant must show that the specific acts or omissions complained of were committed pursuant to a federal duty."); *Pantalone*, 576 F. Supp.2d at 330 (satisfying Section 1442(a)(1) causation requirement "is not a difficult burden," as defendant "must only establish that the act that is the subject of [a plaintiff's] attack . . . occurred while Defendants were performing their official duties") (citation omitted).

Moreover, the evidence proffered by GE, at a minimum, raises a colorable federal defense and demonstrates the causal connection between that which GE did under federal direction and plaintiffs' failure to warn claim.  Nothing more is required to establish federal jurisdiction.  *See Hagen*, 739 F.Supp.2d at 785 (holding that GE and a co-defendant had a "colorable federal defense that any failure to warn relates to the Navy's control over the product Defendants manufactured for the government.  Thus, the necessary causal connection exists

because the liability Defendants face arises from their official duties, performed in accordance with a valid government contract.") (citations omitted).

## II.     PLAINTIFFS' MOTION TO REMAND RELIES ON INCORRECT ASSUMPTIONS.

Courts have long recognized the applicability of the federal contractor defense to product liability claims, including those founded upon a theory of failure to warn. *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995) (recognizing a distinction between applying the government contractor defense to design defect claims and failure to warn claims, but holding "the rationale for applying the government contractor defense to a failure to warn claim tracks the *Boyle* analysis closely").

In an attempt to avoid the well-established law demonstrating that removal is appropriate in this case, plaintiffs incorrectly appear to assume that, since GE manufactured the turbines for the Navy, GE was at liberty to place warnings on them without the Navy's authorization.  In fact, plaintiffs ask this Court to ignore the evidence advanced through Betts, Hobson, and Lehman, and order remand unless GE proffers actual specifications or contracts wherein the Navy precluded GE from issuing warnings about asbestos.  Pursuant to the policy underlying the federal officer removal statute, however, GE need not unequivocally establish that the Navy directly prohibited product manufacturers from placing warnings on the equipment they manufactured according to the Navy's specifications in order to sustain removal.  *See Machnik v. Buffalo Pumps*, 506 F.Supp.2d 99, 103 (D. Conn. 2007) (holding that the affidavit provided by GE demonstrated that the Navy exercised complete control over every aspect of all equipment supplied by contractors, including warnings, and that any materials or equipment supplied that was inconsistent with the Navy's specifications would have been rejected).

For example, in *Reaser v. Allis Chalmers Corp., et al.*, 2:08-cv-01296-SVW-SS (C.D. Cal. June 23, 2008), the Court rejected plaintiff's assertion that GE was required to provide actual contracts to illustrate reasonably precise specifications by the Navy prohibiting warnings, and emphasized that such an unreasonable burden is contrary to the Supreme Court's holdings and has been rejected by several courts. The court found the declarations, like those submitted by GE in this case, are sufficient to establish a colorable federal contractor defense and held that GE "need not prove [its] federal defense to justify removal." *Id.* at *5, *8.

The analysis undertaken by the courts that have denied remand of both similar and identical actions compels the denial of remand in this case. Here, GE has submitted declarations that are not speculative or conclusory opinions, but are accurate sworn statements by experienced naval officers and GE personnel concerning the Navy's strict scrutiny and control over all equipment manufactured by GE for the Navy, including warnings affixed on these products.

Plaintiffs ignore and seek to mislead this Court about the very limited issue this Court must resolve. In order to defeat Plaintiffs' Motion to Remand, GE need only raise a colorable federal defense. *Mesa*, 489 U.S. at 128. GE need not **prove** the federal contractor defense in order to remove this case or establish jurisdiction in this federal court. Plaintiffs, however, request that this Court resolve the substantive factual issues underlying GE's federal defense in deciding the Motion to Remand, a request which is contrary to the law interpreting Section 1442(a)(1) removal. Put simply, GE has raised a colorable, if not complete, federal defense to plaintiffs' claims. That is all that is required of it at this stage of this case. The Court should therefore deny plaintiffs' Motion to Remand.

### III.    PLAINTIFFS' MOTION TO REMAND SHOULD BE DENIED IN ORDER TO PROTECT THE FEDERAL INTEREST AT STAKE IN THIS CASE.

The United States Supreme Court has long recognized that the operations of the federal government would be arrested if federal agents were held accountable in a state court for actions taken within the scope of their federal authority.  *See Tennessee v. Davis*, 100 U.S. 257, 263 (1880).  Congress enacted the removal provisions of §1442(a)(l) to ensure the existence of "a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).  The right to removal under this section is "***absolute*** whenever a suit in a state court is [brought] for any act 'under color' of federal office."  *Willingham*, 395 U.S. at 406 (emphasis added).  Without §1442(a)(l), state courts would have the power to undermine federal law and policy by punishing federal agents for acts committed in furtherance of their official federal duties.  *Id.*

Federal jurisdiction rests on the very basic federal interest in the enforcement of federal law.  *Id.*  Section 1442(a)(1) is thus designed to prevent state courts from interfering with the implementation of federal law.  *See Isaacson*, 304 F. Supp. 2d at 446.  This federal court interest in protecting the rights of federal officials has been extended to private entities "acting under" federal agents such that the liability of a contractor performing its obligation under a procurement contract is controlled by federal law.  *See Boyle*, 487 U.S. at 512; *Isaacson*, 304 F. Supp. 2d at 445.  The most important function of a removal is to allow a federal court to determine the validity of the asserted official immunity defense.  *Willingham*, 395 U.S. at 407.

> The military contractor defense is based upon substantive policy considerations as well as pragmatic procedural factors in controlling litigation ...  Failure to apply the federal officer removal statute would allow into the back door of state litigation what the government contractor defense barred at the front door.

* * * * *

> Because government contractor cases are freighted with factual findings,
> *Boyle,* while laying down a substantive rule, may be readily circumvented
> by state courts unsympathetic to the defendants.

*Isaacson*, 304 F. Supp. 2d at 451.

The defendant need only articulate the colorable applicability of the federal defense to plaintiff's claims to establish federal jurisdiction.  *Winters*, 149 F.3d at 400.  Here GE has advanced, in support of its removal and herein in its opposition to Plaintiffs' Motion to Remand, compelling evidence demonstrating that this Court has jurisdiction over this case.  In order to protect the important federal interest at stake in this case, this Court should exercise that jurisdiction and deny plaintiffs' Motion to Remand.

## **<u>CONCLUSION</u>**

GE therefore asks the Court to deny plaintiffs' Motion to Remand because GE has meet the elements necessary for federal officer removal.  Contrary to plaintiff's assertions, GE does not have to win its claim of federal contractor immunity at the removal stage.  Rather, GE need only state its colorable claim to a federal defense to establish federal jurisdiction.

Respectfully submitted,


FULTZ MADDOX HOVIOUS & DICKENS PLC


*/s/ Gregory Scott Gowen*
Scott T. Dickens
John David Dyche
Gregory Scott Gowen
Jennifer Metzger Stinnett
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202-3116
(502) 588-2000
sdickens@fmhd.com
jddyche@fmhd.com
sgowen@fmhd.com
jstinnett@fmhd.com

Attorneys for General Electric Company


## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2012, I electronically filed the foregoing with the Clerk of the Court through the ECF system, which will provide notice of this filing to the parties identified on the attached service list.

*/s/ Gregory Scott Gowen*
Attorney for General Electric Company