IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
ACTION NO. 3:12-CV-00724-CRS

*Electronically Filed*

| | |
|---|---|
| WILLIAM STALLINGS and<br>CAROL LEE STALLINGS | PLAINTIFFS |
| V. | |
| | CASE NO. 3:12-cv-00724-CRS |
| GEORGIA-PACIFIC CORPORATION, et al. | |
| | DEFENDANTS |

## CRANE CO.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

  Defendant the General Electric Company ("GE") removed this action to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.  Crane Co. has submitted this Opposition to demonstrate that it independently asserts that it is entitled to a federal forum under federal officer jurisdiction.  Plaintiffs seek to avoid removal to federal court by requesting this Court to erroneously apply the restrictive standard favoring limited federal jurisdiction that simply does not apply in the federal officer removal context.  The Federal Officer Removal Standard is Interpreted Broadly and Federal Jurisdiction is proper where defendants establish a colorable defense.  Secondly, plaintiffs rely on their failure-to-warn claim and outlying and outdated opinions that remand actions where the plaintiff is pursuing only failure-to-warn claims.  However, it is well-established that removal based on federal officer grounds is also appropriate in failure-to-warn claims where the removing defendant proves, *inter*

*alia*, the Navy's significant control over warnings and its knowledge regarding the hazards of asbestos. Plaintiffs' arguments for remand are regularly rejected by Federal Courts. Just last week, in Ruppel v. CBS Corp., --- F.3d ----, 2012 WL 5971242 (7th Cir. 2012) the United States Court of Appeals for the Seventh Circuit reversed an order remanding an asbestos failure-to-warn claim and finding that the removing defendant had presented a colorable federal officer defense under nearly identical facts. The Ruppel decision represents the most recent analysis on this question, and this Court should follow it.

Removal is proper in this case because Crane Co. is presenting a detailed evidentiary record demonstrating that the elements of federal officer removal jurisdiction are met. Indeed, Crane Co. offers three affidavits in support of removal of this action: (1) Affidavit of Anthony D. Pantaleoni, the Vice-President of Environment, Health and Safety for Crane Co. since 1989 ("Pantaleoni Aff."), attached as Exhibit "1"; (2) Affidavit of David P. Sargent, a retired Rear Admiral of the Navy who held a variety of program and technical management positions in the Naval Sea Systems Command program offices where he was responsible for the design, construction, fleet introduction, in-service support, and modernization of various classes of warships ("Sargent Aff."), attached as Exhibit "2"; and (3) Affidavit of Dr. Samuel Forman, the proprietor of an occupational health clinic monitoring asbestos exposure and a student of the Navy's historical awareness of asbestos hazards ("Forman Aff."), attached as Exhibit "3." Plaintiffs' Motion to Remand should be denied because Crane Co. has met its burden of establishing that federal officer removal jurisdiction is appropriate because Crane Co. presents a colorable federal officer defense.

I. **PROCEDURAL HISOTRY**

Plaintiffs filed a mesothelioma claim against GE, and nine other defendants, in Jefferson County, Kentucky on September 6, 2012. See Plaintiffs' Motion to Remand ("Plaintiffs'

Motion") at p. 1. GE received service of process the next day. See GE's Notice of Removal at p. 1. The complaint does not contain any information regarding Mr. Stallings's work history or his alleged exposures for any particular defendant's product. See Complaint; GE's Notice of Removal at p. 1. On October 25, 2012, plaintiffs responded to discovery propounded by GE and disclosed, for the first time, that Mr. Stallings claims exposures to asbestos from GE turbines while he was serving as a boiler tender in the US Navy aboard the USS Waller from 1955 to 1959. See Complaint; GE's Notice of Removal at p. 2. GE removed the claim pursuant to §1442 on November 1, 2012. See Complaint; GE's Notice of Removal. Although Crane Co. had been named as one of the ten defendants in Plaintiffs' September 6 Complaint, Crane Co. Crane Co. was not served until November 2, 2012 pursuant to a state court civil summons issued on November 1, 2012. See Plaintiffs' Summons, Complaint, and Crane Co.'s Receipt for Service attached hereto as Exhibit 4.

Crane Co. cannot be denied a Federal forum even though other defendants filed the timely notice of removal and Crane Co. did not have to join in that removal. See e.g. Thurmon v. Georgia Pacific, LLC, MDL-875 No. 11-63953 (E.D. Pa. Aug. 2, 2012) (denying plaintiffs' motion to remand even though the removing defendant had been dismissed from the claim prior to filing the motion to remand.) Indeed, Crane Co.'s opposition to plaintiffs' motion to remand is being filed within thirty days of Crane Co.'s receipt of service in this claim.

## II. ARGUMENT

### A. The Federal Officer Removal Standard is Interpreted Broadly and Federal Jurisdiction is Proper Where Defendants Establish a Colorable Defense.

Persons acting under the direction and control of federal officers (including the United States Navy and its officers) have a distinct and independent right to remove a case so that it may be adjudicated in a federal district court. 28 U.S.C. § 1442; Durham v. Lockheed Martin Corp.,

3

445 F.3d 1247, 1253 (9th Cir. 2006) (holding that "the Supreme Court has mandated a generous interpretation of the federal officer removal statute").

The basis for removal of this action is the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. Removal is appropriate under this provision, where the removing defendant establishes that:

(1) the defendant is a person[1] under the statute;

(2) the defendant has raised a colorable defense based upon federal law;

(3) the defendant was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; and

(4) there is a causal nexus between the plaintiff's claims and the defendant's actions under federal direction.

See Mesa v. California, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).

At this stage, defendants are not required to "virtually win [their] case" to remove the action, they merely have to show that their federal defense has some basis in law and fact. Jefferson County v. Acker, 527 U.S. 423, 431 (1999); O'Connell v. Foster Wheeler Energy Corp., 544 F. Supp. 2d 51, 54 (D. Mass. 2008). Federal officer removal should be interpreted broadly. Durham, 445 F.3d at 1253; Kirks v. General Electric Co., 654 F. Supp. 2d 220, 222 & 226 (D. Del. 2009). The United States Supreme Court held that "the right of removal is absolute for conduct performed under color of federal office" such that the policy favoring removal "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." Arizona v.

---

[1] Plaintiff does not dispute that GE constitutes a "person" under the statute and thereby satisfies this element. See also Ruppel, 2012 WL 971242 at *3; Winters v. Diamond Shamrock Co., 149 F.3d 387, 398 (5th Cir. 1998) (holding that a "person" includes a corporation); Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992).

4

Manypenny, 451 U.S. 232, 242 (U.S. 1981) (marks omitted); see also Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482, 487 (1st Cir. 1989); Harris v. Rapid Am. Corp., 532 F. Supp. 2d 1001, 1004 (N.D. Ill. 2007).

The cases plaintiffs cite in support of their argument that there should be a presumption favoring remand are not applicable because they did not involve federal officer removal. Kokkonen v. Guardian Life Insurance Co., 511 US 375 (1994)(declining federal jurisdiction in a contractual dispute over a motion to enforce settlement in a breach of agency dispute); Marshall v. Manville Sales Corp., 6 F.3d 229 (4th Cir. 1993)(declining federal jurisdiction over an employment discrimination suit brought under the West Virginia Human Rights Act); Anusbigian v. Trugreen/Chemlawn, Inc., 72 F.3d 1253 (6th Cir. 1996)(affirming remand where the amount in controversy did not satisfy the threshold for diversity jurisdiction); Her Majesy the Queen in Right of Province of Ontario v. City of Detroit, 874 F.2d 332 (6th Cir. 1989)(declining federal jurisdiction finding the Michigan Environmental Protection Act was not displaced by the Clean Air Act); Screws v. United States, 325 US 91 (1945)(analyzing removal of a criminal prosecution against state law enforcement officers for civil right violations). The presumption in federal officer cases favors denial of motions to remand.

Plaintiffs' arguments for remand are built upon a mistaken premise that the federal officer removal statute is to be narrowly interpreted. This is not correct. Willingham v. Morgan, 395 U.S. 402, 406-07 (1969) (explaining, "[a]t the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. One of the primary purposes of the removal statute – as its history clearly demonstrates – was to have such defenses litigated in the federal courts."). A colorable defense under Section 1442(a)(2) requires a minimal showing that defendants have identified facts

5

"which, if viewed in the light most favorable to the defendant, would establish a complete defense at trial." Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010). The validity of the defense will present "complex issues, but the propriety of removal does not depend on the answers." Ruppel, 2012 WL 5971242 at *4 (citing Venezia v. Robinson, 16 F.3d 209, 212 (7th Cir.1994)). Instead, the claimed defense need only be "plausible" and requiring the defense only be colorable, instead of "clearly sustainable," advances this goal. Id.

Here, Crane Co. raises a colorable government contractor defense. By extension, Crane Co. also demonstrates the necessary causal nexus between plaintiff's claims and Crane Co.'s actions under federal direction. Crane Co. is entitled to a federal forum based on federal officer jurisdiction and the proper removal of this claim.

**B.     Federal Officer Removal Is Appropriate in this Matter.**

Here, Crane Co. meets all of the elements of federal officer removal, and therefore removal pursuant to the federal officer removal statute is proper.

### 1. Government Contractor Defense Also Applies to Failure-to-Warn Claim.

Removal based on federal officer grounds is appropriate in failure to warn claims where the removing defendant demonstrates, (1) the Navy exercised discretion with respect to warnings, (2) the defendant provided materials conforming to the government's specifications, and (3) that the Navy possessed extensive knowledge regarding the hazards of asbestos. Federal courts have overwhelmingly held that the government contractor defense applies to product liability claims based upon a failure to warn theory. See, e.g., Getz v. Boeing Co., 654 F.3d 852, 867 (9th Cir. 2011); Kerstetter v. Pacific Scientific Co., 210 F.3d 431, 438 (5th Cir. 2000); Oliver v. Oshkosh Truck Corp., 96 F.3d 992, 1003-04 (7th Cir. 1996) (holding that "[i]t is well established that the government contractor defense articulated by the Supreme Court in Boyle

6

may operate to defeat a state failure-to-warn claim"); Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 783 (E.D. Pa. 2010) (holding that "courts have recognized the [government contractor] defense's applicability to failure to warn claims"); Faddish v. General Electric Co., 2010 WL 4146108, at *7 (E.D. Pa. Oct. 20, 2010) ("It is now well established that the government contractor defense is not limited to design defect causes of action, but also applies to failure to warn claims."); O'Connell v. Foster Wheeler Energy Corp., 544 F. Supp. 2d 51, 54 (D. Mass 2008).

In 2010, the MDL-875 Court[2] found that (1) the government contractor defense in a naval/maritime failure to warn asbestos case does not require a defendant to establish that the government prohibited warnings, and (2) the expert affidavits that Crane Co. presented in support of its removal petitions (which are essentially the same affidavits that are at issue here), establish the existence of a colorable government contractor defense in a failure to warn claim. See Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770 (E.D. Pa. 2010).[3] Indeed, the MDL-875 Court has consistently denied plaintiffs' motions to remand under similar circumstances.[4] The

---

[2] MDL-875 was established for federal asbestos litigation.

[3] The Southern District of New York recently found that allegations of asbestos exposure in a Navy setting were sufficient to provide notice that a case should be removed. See Levy v. A.O. Smith Water Prods. Co., No. 12-cv-05152-SAS, 2012 WL 2878140 (S.D.N.Y. July 13, 2012). In other words, under the relevant law, there is no real question that cases involving alleged exposure on Navy ships create federal jurisdiction pursuant to the government contractor defense.

[4] Consistent with its decision in Hagen, the MDL-875 Court denied motions to remand on nearly identical facts as presented here. See e.g., In re Asbestos Products Liability Litig. (No. VI), 2011 WL 925414, at *4-6 (E.D. Pa. 2011); Stone v. Various Defendants, No. 2:09-cv-93726-ER, at 3 n.1 (E.D. Pa. 2011); Neubrand v. Various Defendants, No. 2:10-78901, at 2-3 n.1 (E.D. Pa. 2011); Rabovsky v. Air & Liquid Systems, No. 10-3202 (E.D. Pa. 2011); Constantinides v. Alfa Laval, No. 09-70613 (E.D. Pa. 2011); Floyd v. Air & Liquid Systems, No. 10-69379 (E.D. Pa. 2011). Other district courts that recently analyzed similar claims have consistently denied remands. Leite v. Crane Co., CV No. 11-00636, 2012 WL 1277222 (D. Haw. 2012) (appeal pending); Thompson v. Crane Co., CV No. 11-00638, 2012 WL 1344453 (D. Haw. 2012)

7

Hagen decision received the imprimatur of the Judicial Panel in Multidistrict Litigation, which indicated that Hagen should provide guidance to federal court asbestos claims raising the government contractor defense. See In re Asbestos Products Liability Litigation (No. VI), 830 F. Supp. 2d 1377, 1379 (J.P.M.L. Dec. 13, 2011). The Judicial Panel specifically featured Hagen, which, as the Judicial Panel notes, holds "that removal pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), is proper where the defendant has identified facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense." Judicial Panel Order at note 5. The Hagen opinion states, "[f]or policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense. It is not the Court's role to impose judicially created tolls on those who seek to travel on it." Hagen, 739 F. Supp. at 783.

In the same general time frame in which the MDL-875 Court decided Hagen, the United States Court of Appeals for the Ninth Circuit decided that a removing defendant did not need to present evidence that the government expressly prohibited warnings to sustain a government contractor defense in a failure to warn claim. Getz v. Boeing Co., 654 F.3d 852, 867 (9th Cir. 2011). The Ninth Circuit clarified its earlier decisions in In re Hawaii Federal Asbestos Cases, 960 F.2d 806 (9th Cir. 1992) and Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582 (9th Cir. 1996), which prior courts (including the courts upon whose pre-Getz decision plaintiff relies here) had interpreted erroneously to hold that such express prohibitions of warnings were a necessary prerequisite to a successful government contractor defense. Id. Getz stated unequivocally that this was an incorrect analysis of the government contractor defense. See also Ruppel, 2012 WL 5971242, at *8 n.2.

---

(appeal pending); Brantley v. Borg-Warner Morse Tec, Inc, et al., CV No. 3:12cv540 (S.D. Cal. May 3, 2012); Vedros v. Northrop Grumman Shipbuilding, Inc., 2012 WL 3155180, at *6 (E.D. Pa. Aug. 2, 2012).

Here, plaintiffs not only fail to distinguish Hagen or Getz, they do not even cite these opinions at all in their motion to remand. Plaintiffs' arguments are outdated and have been rejected by federal courts analyzing removals based on nearly identical facts as presented here.

In Ruppel, the United States Court of Appeals for the Seventh Circuit reversed the district court's decision remanding an asbestos bodily injury claim. Ruppel, 2012 WL 971242 at *8. Ruppel involved a case brought on behalf of a former Navy sailor and shipyard worker who claimed exposures to Westinghouse turbines while serving on the USS Fall River between 1946 and 1954 and when overseeing the construction of the USS Enterprise, as a civilian, from 1957 to 1971. Id. at *1. As in the case *sub judice*, CBS, a successor to Westinghouse, removed the claim pursuant to 28 U.S.C. § 1442(a)(1). Id. As Crane Co. is offering now, Westinghouse provided affidavits and exhibits supporting its factual assertions the Navy required CBS to use asbestos, the Navy controlled the content of any warnings, and the Navy knew of asbestos's health risks. Id. at *2.

Hagen involved consideration of a motion to remand a case removed by Foster Wheeler Corporation and General Electric, who allegedly supplied asbestos-containing products for installation aboard Navy ships. Hagen, 739 F. Supp. at 772. The defendants in Hagen provided similar affidavits from various corporate witnesses and Navy experts to establish the elements of the government contractor defense. Id. at 773 (describing the substance of the affidavits, which mirror those submitted here). In Hagen, the MDL-875 Court conducted a thorough and detailed review of the available case law concerning the removal of asbestos cases on government contractor grounds (including many of the cases cited by plaintiff here). After reviewing the available decisions on the matter, the MDL-875 Court found that in applying the Boyle doctrine to failure to warn claims, defendants must show the following:

9

> (1) the United States exercised its discretion and approved the warnings, if any;
> (2) the contractor provided warnings that conformed to the approved warnings;
> and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

Id. at 783 (internal citations omitted). In applying this test in Hagen, the MDL-875 Court found that defendants did not need to show that the Navy prohibited warnings, defendants only needed to show that the Navy exercised discretion to meet the first element of Boyle. See id. For purposes of removal, the MDL-875 Court noted that defendants were only required to establish a colorable defense. Id. In analyzing that defense, that court found that "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants, and does not address the merits of the defense." Id. at 783-84. In Hagen, the MDL-875 Court ultimately held that "[u]nder this standard, it is clear that Defendants raise a colorable defense because Defendants would prevail on their defense at trial if the facts raised were proven." Id. at 784. Focusing on the low burden imposed by the "colorable" federal defense element and the broad interpretation of federal officer jurisdiction, the Court concluded that GE met its burden to establish a colorable government contractor defense, and held that the acting under and causal nexus elements were also met because they were closely related to the colorable federal defense element. The affidavits and arguments presented here by the removing defendants and by Crane Co. are no different than those presented in Hagen.

### 2. Crane Co. Was Acting Under the Direction of a Federal Officer.

Crane Co. presents a colorable federal defense as required under Mesa. Here, Crane Co.'s affidavits demonstrate that the Navy exercised its discretion regarding warnings, and that Crane Co. provides a colorable defense as to each element of the Boyle standard. Under the first and second elements of the Boyle standard, Crane Co. valves were designed and manufactured pursuant to precise contracts and specifications approved by the Navy. See Pantaleoni Aff., at

10

¶¶ 5-6; Sargent Aff., at ¶¶ 22-32. Since the 1950s, the Navy issued Military Specifications (MILSPECs) for various equipment, including valves of the type manufactured by Crane Co., and certain MILSPECs required that internal gaskets in the valves be "asbestos sheet gaskets." Sargent Aff., at ¶¶ 26-27. Moreover, compliance with the specifications for equipment to be used on Navy ships was directly monitored by Naval Machinery Inspectors. Sargent Aff., at ¶ 29. Unless Crane Co. equipment was first determined to be in conformity with all applicable Navy specifications, it could not be installed aboard Navy ships. Sargent Aff., at ¶ 29. Thus, given the Navy's direct and detailed control over the design and manufacture of Crane Co. valves, it has met this element.

Specifically with respect to warnings, as Admiral Sargent averred:

> To achieve its objective of ensuring that, in form and content, the marking on equipment filled the specific informational role, for the specific Navy audience and environment, the Navy developed precise specifications as to the nature of any markings, communication or directions affixed to or made a part of any equipment supplied by OEMs for ultimate use aboard Navy ships. ***OEMs would not have been permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to vary or deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship***, beyond those specifically required by the Navy without prior discussion and express approval by the Navy.

Sargent Aff., at ¶ 58 (emphasis added). Further, Admiral Sargent's sworn statement says that the Navy participated closely in the preparation and review of instruction books and technical manuals, including making "word-by-word" line edits in reviewing the contents of all technical manuals, including any cautionary language:

> Manufacturers of components and equipment were not permitted, under the specifications, associated regulations and procedures, nor under the actual practice as it evolved in the field, to include any type of warning or caution statement in instruction books or

11

> technical manuals, beyond those required and approved by the Navy without prior discussion and approval by the Navy. ***The Navy dictated and, itself or through its Design Agents, reviewed and approved the contents of all technical manuals, including any cautionary language or emphasis.*** The Navy approached this process for review and approval of technical manuals in an exacting manner. ***It often created lengthy memoranda detailing word-by-word line edits to the content of technical manuals submitted for approval, including the wording of instructional material and warnings.***

Sargent Aff., at ¶ 60 (emphasis added). In sum, the Navy exercised significant discretion regarding warnings.

Admiral Sargent further emphasized that the communication of safety and health information in written materials relating to equipment aboard Navy ships had to be consistent with the Navy's overall practices and priorities, and the realities of the workplaces:

> The reasons for the Navy's detailed control over and review and approval of all written communication regarding equipment it procured was to ensure consistency of that information with the overall goals and priorities of the Navy in its operations. The Navy employed millions of uniformed and civilian personnel aboard thousands of vessels and at hundreds of land-based facilities around the world. The information provided with regard to equipment had to be consistent with the Navy's overall evaluation of the appropriate types and level of information its personnel required to efficiently perform their job responsibilities under a variety of circumstances. In addition, written communications regarding work practices, including safety precautions and equipment, had to be coordinated with the training of Navy personnel, the physical circumstances in which they performed their work, and the tools, protective devices and equipment and other materials available aboard Navy vessels and at Navy installations.

Sargent Aff., at ¶ 61.

Admiral Sargent concluded that, "Consistent with its objective to ensure that all documentation to which its personnel were exposed, be thoroughly consistent with its overall training and procedures, the Navy ***would not have permitted equipment suppliers to place***

12

***asbestos-related warnings on packing or containers for pumps or related parts or items*** supplied during the 1940s, 1950s, or 1960s." Sargent Aff., at ¶ 63 (emphasis added). Moreover, "the Navy ***would not have permitted equipment suppliers to place asbestos-related warnings in any literature or documentations*** supplied with pumps for Navy ships during the 1940s, 1950s and 1960s." Id. Reinforcing Admiral Sargent's testimony, Dr. Forman has testified that he has "not located a single instance in which the Navy, at any time during the 1930s through the 1960s, instructed or permitted a supplier of engineering equipment to a vessel or facility to affix or provide any asbestos-related warning with its equipment." See Affidavit of Samuel A. Forman ("Forman Aff."), at ¶ 59 [doc # 7-11 to 1-13]. This evidence demonstrates the Navy's exercise of significant discretion regarding warnings.

With respect to the third element of the Boyle standard, the Navy, as one of the leaders in industrial hygiene state of the art, possessed knowledge regarding the hazards of asbestos equal to or superior to its equipment suppliers, such as Crane Co. See Forman Aff., at ¶¶ 21-23. Specifically, several Navy studies verify that as early as 1922, the Navy recognized and attempted to mitigate the harm of exposure by seamen to asbestos. Forman Aff., at ¶ 27. Further, Dr. Forman cites to a study appearing in a 1947 issue of the Navy's Safety Review, which noted the potential health hazards resulting from asbestos exposure. Forman Aff., at ¶ 43. Given the evidence of significant Navy control over the warnings in conjunction with the Navy's significant knowledge of asbestos hazards, Crane Co. has established a colorable government contractor defense to plaintiff's failure to warn claim.

### C. In Light of Crane Co.'s Well-Reasoned Contrary Authority, Plaintiff's Cases Do Not Change the Result.

Plaintiff selectively picks a handful of cases that granted remand finding that the defendant lacked a colorable government contractor defense to support removal. In doing so,

plaintiff ignores the numerous cases in which courts have denied remand in failure-to-warn claims when considering similar evidence as presented here. Plaintiffs' Motion at pp. 23-25.

None of these decisions, however, post-dates <u>Ruppel</u>, <u>Getz</u> or the Judicial Panel's instructive guidance to follow <u>Hagen</u>; therefore, none of those decisions represents a present basis for any difference of opinion on this issue. To the contrary, each of the case authorities plaintiffs cite is based upon an erroneous interpretation of <u>In re Hawaii Federal Asbestos Cases</u> and/or <u>Butler</u>, which interpretation the <u>Getz</u> court confirmed to be incorrect, or do not address failure to warn claims. After <u>Ruppel</u> and <u>Getz</u>, there is no current ground for any difference of opinion as to what the law is.

The <u>Getz</u> decision expressly clarifies the two prior Ninth Circuit opinions that have been misinterpreted by some courts, and cited by plaintiffs here, for the proposition that the government contractor defense required defendants to produce evidence that the government prohibited warnings. Specifically, the unanimous three-judge panel in <u>Getz</u> rejected such an interpretation of the prior Ninth Circuit opinions stating:

> We are not persuaded by Plaintiffs' suggestion that our decisions in <u>Butler</u> and <u>Hawaii Federal Asbestos</u> limit the defense to cases in which the government specifically forbids warnings altogether or to instances where the government explicitly dictates the content of the warnings adopted. These cases only require that governmental approval (or disapproval) of particular warnings "conflict" with the contractor's "duty to warn under state law." <u>Butler</u>, 89 F.3d at 586; see also <u>Haw. Fed. Asbestos</u>, 960 F.2d at 813 (rejecting the defense where the government's specifications were silent about warnings). To read these cases as limiting preemption to those instances where the government forbids additional warning or dictates the precise contents of a warning would be inconsistent with the Court's decision in <u>Boyle</u>. <u>See</u> <u>Oliver</u>, 96 F.3d at 1004 n. 8 (rejecting plaintiff's argument that Butler *and* <u>Hawaii Federal Asbestos</u> could be interpreted as imposing such a "rigid" rule). <u>Boyle</u> makes clear that government discretion, rather than dictation, is the standard. 487 U.S. at 512-13.

654 F.3d at 867.

Crane Co. provides a colorable government contractor defense under the modified <u>Boyle</u> standard that is applied to warning cases. <u>Getz</u> confirmed that a government contractor in a failure to warn claim must show that it acted in compliance with "reasonably precise specifications imposed on it by the United States in deciding whether to provide a warning." <u>Id.</u> at 866. Satisfying this standard requires the contractor to prove: "(1) that the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." <u>Id.</u> (citing <u>Oliver</u>, 96 F.3d at 1003).

### III. CONCLUSION

Crane Co. has established a colorable basis for removal under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Accordingly, Crane Co. respectfully requests that this Court deny plaintiff's motion to remand.

This 7th day of December, 2012.

        COLE & MOORE, P.S.C.
        921 College Street
        P. O. Box 10240
        Bowling Green, KY 42102-7240
        (270) 782-6666

        /s/ Stefan Richard Hughes
        Stefan Richard Hughes
        Counsel for Defendant Crane Co.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 7th day of December, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties.

      /s/ Stefan Richard Hughes_____
      Stefan Richard Hughes

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the ____ day of December, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties.

/s/ _____