UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00724-H

WILLIAM STALLINGS and                                                                    PLAINTIFFS
CAROL LEE STALLINGS

V.

GEORGIA-PACIFIC CORPORATION, *et al.*                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, William Stallings and Carol Lee Stallings, brought suit in the Jefferson Circuit Court against ten defendants alleging various state common law causes of action. One defendant, General Electric Corporation ("GE"), removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. Thereafter, Plaintiffs moved to remand to state court. After Plaintiffs served Crane Company ("Crane") with the Complaint, Crane also asserted its right to a federal forum under the same jurisdictional statute and opposed Plaintiffs' motion to remand. Plaintiffs contend that neither GE nor Crane (collectively, "Defendants") satisfy the requirements for federal officer removal. The Court disagrees, and for the reasons that follow, the Court will deny Plaintiffs' motion.

I.

In September of 2011, doctors diagnosed Mr. Stallings with malignant mesothelioma, allegedly caused by exposure to asbestos products. Plaintiffs attribute the asbestos exposure to Mr. Stallings' work from 1955 to 1959 as a boiler tender aboard the USS Waller, a destroyer in the United States Navy. Particular to this case, the Navy equipped the USS Waller with steam turbines covered with insulation containing asbestos. According to Plaintiffs, GE manufactured the steam

turbines that contained asbestos, and Crane manufactured valves with internal asbestos sheet gaskets.

Plaintiffs filed suit in the Jefferson Circuit Court alleging strict liability, negligence, punitive damages, personal injuries, and loss of consortium counts in their Complaint. GE removed to this Court on November 1, 2012, which is the basis of Plaintiffs' present Motion to Remand.

II.

Defendants removed this action pursuant to 28 U.S.C. § 1442(a), which states,

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

Because "government contractors are degrees different from both the federal officers who originally inspired the removal statute and the cases in which the Supreme Court later coined its cautionary language," where the defendant is not a federal officer, the defendant must provide additional evidentiary support to prove that it acted under governmental authority. *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 141 (D. Mass. 2009). To this end, private contractors are only entitled to federal officer removal where: (1) the defendant is a "person" within the meaning of the statute; (2) the defendant shows that it acted under a federal officer or agency; (3) the defendant "demonstrate[s] that it performed the actions for which it is being sued under color of federal office"; and (4) the defendant "raise[s] a colorable federal defense." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010)(internal citations omitted). These elements derive from the Sixth

Circuit's reading of the seminal Supreme Court decision on federal officer removal, *Mesa v. California*, 489 U.S. 121 (1989).

The parties do not dispute that GE and Crane are persons under the statute, even though a plain reading of the statute does not expressly so state. Though the statute protects the United States and its agencies, Congress contemplated that the statute would cover non-natural persons. *Bennett*, 607 F.3d at 1085. The parties do contest the remaining three issues, each of which the Court will address separately.

As a threshold matter, however, the Court notes two important concepts that are material to the present motion. First, "federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Moreover, "[t]he removal petition is to be strictly construed, with all doubts resolved against removal." *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). However, suits against federal officers are an exception to the general removal rules, which dictate that "an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit. . . . Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 430-31 (1999). The federal officer removal statute reflects a congressional decision to ensure that a federal officer is tried on state law issues without local prejudices impinging the fairness of the trial and to enable the defendant to "have the validity of his immunity defense adjudicated, in a federal forum." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). For this reason, the Supreme Court "has held that the right of removal

is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Id.*(quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

Second, Plaintiffs argue that GE and Crane failed to support their objections to Plaintiffs' motion to remand with sufficient facts to justify removal. Plaintiffs claim that Defendants posited baseless assertions, without any justification in the form of contracts, invoices, or specifications. While Defendants supported their objections to remand with declarations and affidavits of presumptive experts, these declarants and affiants opined on Navy policy generally without ever commenting on the USS Waller specifically. Therefore, according to Plaintiffs, Defendants' arguments are speculative at best.

District courts across the country have addressed the sufficiency of evidence arguments in cases with a similar level of evidentiary support, and have come to varied conclusions. *Compare Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Penn. 2010) *with Holdren*, 614 F. Supp. 2d 129. This Court will not impose some draconian evidentiary hurdle for Defendants to overcome at this stage of the lawsuit for two reasons. First, discovery in this case is far from complete, and the case is still in its infancy. The Court cannot require Defendants to have fully developed defenses at this point. Second, while private companies are likely not the paradigmatic federal officer protected under the federal officer removal statute, *Holdren*, 614 F. Supp. 2d at 136, "[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). As such, the federal government has a vested interest in resolving disputes against its agents in federal courts, and 21 U.S.C. § 1442(a)(1) codifies this

4

concern.

Therefore, "the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated." *Hagen*, 739 F. Supp. 2d at 782. The Court finds that Defendants can meet their evidentiary obligations to sustain their notice of removal with declarations and affidavits, depending on the content and source of the information contained therein. The declarants and affiants here seem to possess the requisite competency levels to testify as to the information contained within the declarations and affidavits, which themselves appear to be reasonable at this stage.

### III.

To obtain federal jurisdiction under § 1442(a)(1) where the defendant is not itself a federal officer, the defendant must prove that it was acting under a federal officer or agency. Courts read the statute liberally and construe the words "acting under" broadly. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). The Supreme Court defined "acting under" as

> acting in a certain capacity, considered in relation to one holding a superior position or office. That relationship typically involves subjection, guidance, or control. In addition, precedent and statutory purpose make clear that the private person's "acting under" must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.

*Id.* at 151-52 (internal citations omitted). A private company's compliance with a regulatory order is not enough to satisfy this prong of the removal test. *Id.* at 152. However a private contractor is acting under a government agency when it "is helping the Government to produce an item that it needs. The assistance that private contractors provide federal officers . . . helps officers fulfill other basic governmental tasks." *Id.* at 153. Here, GE and Crane contracted with the Navy to produce certain machines and machine parts integral to the functioning of a Navy destroyer, furthering the

federal government's defense objectives. Therefore, Defendants acted under a federal agency.

Plaintiffs argue that GE did not produce evidence that it was under the direct orders of a federal officer, and that the federal government had no direct control or supervision of the work. However, GE's declarations show that the Navy had an "extensive level of control" over the "design and manufacture of Navy turbines"; that manufacturers were bound to comply with these detailed military specifications; and that after production the Navy engaged in a testing and review process of the turbines to ensure their compliance with military specifications. Crane's affidavits show that the Navy exercised the same level of detailed guidance and inspection over the Crane valves. This information is sufficient to establish that GE and Crane acted under a federal agency.

Plaintiffs further argue that GE manufactured the turbines for military and public consumption, thereby destroying Defendants' argument that the military had extensive control over GE and Crane. However, Defendants' affidavits state that because the military specifications ensured that the turbines fit complex war vessels, the level of Navy control over the small details "far exceeds anything seen in the realm of civilian products." Even if Plaintiffs prove that GE sold these exact turbines to non-governmental entities, this does not undermine Defendants' demonstration, for the purpose of removal, that the Navy possessed extensive control over the design and manufacture of these turbines such that GE's production thereof was effectively acting under a federal agency.

IV.

To prove that Defendants acted under color of office, "the officer must show a nexus, a '"causal connection" between the charged conduct and asserted official authority.'" *Acker*, 527 U.S. at 431 (quoting *Willingham*, 395 U.S. at 409). Therefore, the defendant "must by direct averment

exclude the possibility that [removal] was based on acts or conduct of his not justified by his federal duty." *Mesa*, 489 U.S. at 132. Defendants maintain that their burden as to this element is not difficult to meet. *See Bennett*, 607 F.3d at 1088 ("The Supreme Court has indicated that '[t]he hurdle erected by this requirement is quite low.'")(quoting *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008)); *see also Holdren*, 614 F. Supp. 2d at 150 ("As a general matter, this element will not be hard to satisfy. It simply prevents removing defendants from imputing their own unrelated judgments to the government after the fact."). Defendants must simply show that "[P]laintiffs' claims arise from [D]efendants' performance of their duties under their contract with the Navy." *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d. 1315, 1335 (N.D. Ala. 2010).

Plaintiffs argue that Defendants must further prove that they acted pursuant to a federal interest, and GE cannot point to any federal interest or duty that supports its failure to warn of asbestos dangers. Indeed, Defendants have provided no evidence that the Navy's position on asbestos warnings had any bearing on their own decisions.[1] However, the Sixth Circuit has held that when a private contractor's work, performed at the direction of federal officers as required under the contract, was also the cause of plaintiffs' personal injuries, this element is satisfied. *Bennett*, 607 F.3d at 1088(holding that "it is sufficient for our purposes that MIS's execution of the FAA contracts gave rise to the alleged cross-contamination"). While other courts require a more extensive causal connection, *see Holdren*, 614 F. Supp. 2d at 150, this Court is confined to the Sixth Circuit's lower evidentiary burden. The Court finds this approach reasonable, because "[w]hen the military

---

[1] According to Plaintiffs, Defendants argue that if they sought to warn of asbestos hazards, the Navy would have rejected the proposal. Plaintiffs expend considerable effort refuting this argument with evidence that the Navy's internal standards and instructions allowed for government contractors to post reasonable warnings about dangers of which they are aware. However, Defendants do not seem to actually make this argument. In any event, what the Navy would have done if Defendants proposed to post asbestos warnings is inapposite, as this analysis would require the Court to arrive at a purely speculative conclusion by indulging in an examination of this hypothetical situation.

commissions a product, its design specifications reflect a trade-off between safety and performance that trumps conflicting state law." *Holdren*, 614 F. Supp. 2d at 137.

Defendants have offered proof in the form of declarations and affidavits that they manufactured these machines and machine component parts in compliance with the detailed specifications required by the Navy. Naval officers administered and ensured compliance with the contracts, and Plaintiffs' alleged injuries arose out of the decision to use certain materials to perform those contracts. Thus, Defendants have produced enough evidence to show that a causal nexus exists between GE's use of asbestos and the Navy's contract with GE. Crane has established a similar causal link. Therefore, Defendants have satisfied this element.

V.

Finally, Defendants must show that they possess a colorable federal defense to achieve entitlement to federal jurisdiction under the federal officer removal statute. "[A] colorable federal defense need only be plausible, and [] a district court is not required to determine its validity at the time of removal." *Bennett*, 607 F.3d at 1089 (internal citation omitted). Despite Plaintiffs' inferences to the contrary, the Supreme Court has "recogniz[ed] that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.' We therefore do not require the officer virtually to 'win his case before he can have it removed.'" *Acker*, 527 U.S. at 432 (quoting *Willingham*, 396 U.S. at 407). However, "[a] colorable federal defense, as Mesa itself makes plain, is not a requirement that may be reduced to the point of vanishing altogether." *Holdren*, 614 F. Supp. 2d at 141.

Defendants claim that as military contractors, they are entitled to the government contractor defense, which affords government contractors immunity "from state tort liability for design defects

in military equipment." *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1153 (6th Cir. 1995).[2] The government contractor defense is a product of the unique federal interest in protecting the military manufacturing industry because otherwise, "either the contractor will decline to manufacture the design specified by the Government, or it will raise its price." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988). This immunity is far from absolute, because it shields a private company from liability only where there "exist[s] a 'significant conflict between the federal interest and the application of state law.'" *Tate*, 55 F.3d at 1153 (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966)). Therefore, the Supreme Court established a three-part test for determining whether a private company is entitled to the government contractor defense. *Boyle*, 487 U.S. at 512. According to this test, a private company is immune from state tort liability where:

> (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.*

First, Defendants have presented sufficient evidence to demonstrate that the United States approved precise specifications for the GE turbines and Crane valves, as set forth in their discovery answers, declarations, and affidavits. The Navy administered the contracts with Defendants by developing comprehensive and detailed instructions and specifications for the equipment to be manufactured. While Plaintiffs argue that the United States merely rubber-stamped GE-developed specifications, and the turbine design and manufacture incorporated no federal government

---

[2] Plaintiffs allege failure-to-warn and design defect claims. If the Defendants have a colorable defense to any claim, then the entire case is removable. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012)(quoting 28 U.S.C. § 1367). In *Ruppel*, the Seventh Circuit discussed whether the government contractor defense is applicable to both the "use-of-asbestos" claims and the "failure-to-warn" claims, but the Court finds this additional analysis unnecessary at this point.

judgment, Defendants' evidence supports a colorable argument as to this first element.

Second, Defendants established that the Navy supervised and enforced Defendants' compliance with the specifications through a hierarchical command system that involved significant interaction between naval officers and GE employees. Plaintiffs' only argument to the contrary is that Defendants failed to produce evidence that GE conformed to the specifications presented. However, as stated above, the Court finds satisfactory the use of declarations and affidavits of qualified and reliable declarants and affiants as evidence to support arguments at the remand of this lawsuit. Moreover, Defendants' argument need only be plausible, and Defendants' have accomplished this generous burden.

Finally, GE's declarants stated that the Navy was well aware of the danger of asbestos exposure, so that the United States had knowledge of all dangers of which GE was also aware. Crane's affidavits testify that the Navy possessed knowledge regarding the hazards of asbestos equal or superior to that of its equipment suppliers well before the Defendants manufactured the equipment at issue. Plaintiffs respond that GE was aware of asbestos hazards for decades, a fact which Defendants do not dispute. However, this element requires the supplier to warn the United States of dangers of which the United States is not aware. So where the United States had knowledge equal to or greater than the suppliers as to the hazardous nature of asbestos, Defendants have satisfied this element.

Defendants present a reasonable argument that the United States military's knowledge of "the applications of asbestos and the health effects represented the state of the art," because of the Navy's "longstanding and notable occupational safety and health program" developed in the 1920s. Defendants contend that this knowledge far exceeded the knowledge of private contractors, due to

10

the advanced nature of the program and the military's superior access to information about the context and operation of the overall warship into which these machines were incorporated, facts that are integral to any occupational health safety assessment. Defendants have satisfied the low evidentiary hurdle required for this fourth element.

In sum, Defendants have presented enough evidence to present a plausible argument that they are entitled to the government contractor defense.[3] As such, they have satisfied this final requirement of the federal officer removal statute.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand is DENIED.

cc:   Counsel of Record

---

[3] The Court does not reach the merits of the government contractor defense argument, but merely concludes that Defendants have presented enough evidence to produce a colorable federal defense.

11