UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| CAROL LEE STALLINGS, Individually and as Executrix of the Estate of William Stallings, | Plaintiff, |
| v. | Civil Action No. 3:12-cv-724-DJH |
| GEORGIA-PACIFIC CORPORATION, et al., | Defendants. |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

William Stallings sued Georgia-Pacific Corporation, IMO Industries, Crane Company, John Crane Inc., and CBS Corporation under strict liability and negligence theories, alleging that exposure to their asbestos-containing products caused him to develop mesothelioma. (Docket No. 1) Following Stallings's death, his widow, Carol Lee Stallings, continued the suit as executrix of his estate. (D.N. 91) Each remaining defendant has moved for summary judgment. (D.N. 164, 180, 182, 183, 184) Because the plaintiff cannot establish substantial causation against each defendant, the Court will grant the motions.

**I.      BACKGROUND**

William Stallings joined the Navy in 1955. (D.N. 180-2, PageID # 5795) After basic training, he was assigned to the USS Waller—first commissioned as a destroyer in 1942—as a boiler operator. (*Id.*, PageID # 5796) In this job, he took readings on machinery, checked the oil, ran the fireboxes, and repaired boilers and pipes. (*Id.*) Each fire room on the USS Waller had its own boilers, turbines, and pumps. (*Id.*) In his deposition, Stallings testified that asbestos insulation covered all the steam and water lines, the turbines, and the boilers. (*Id.*, PageID # 5797) Every time Stallings replaced a valve, he had to remove an asbestos gasket

1

that went between the flanges of the valve. (*Id.*, PageID # 5798) Consequently, he inhaled large quantities of asbestos dust while working for the Navy. (*Id.*) Stallings served on the USS Waller from 1955 to 1959. (*Id*, PageID # 5799)

Stallings could not identify any of the manufacturers of the products he worked on while in the Navy. (D.N. 180-2, 180-3) But the expert report of Captain William A. Lowell buttressed Stallings's claims about asbestos. (D.N. 180-8) Based on Captain Lowell's experience, training, and review of Stallings's deposition, Captain Lowell opined that Stallings "regularly came into contact with Asbestos containing materials associated with multiple pieces of equipment provided by and/or manufactured by John Crane, Crane Co., Westinghouse, and DeLaval (IMO) or companies now associated with them in his daily work over his approximately 3 ½ years on the USS Waller." (*Id.*, PageID # 5959)

After leaving the Navy, Stallings worked as a drywall finisher for Timmerman Drywall and Stigler Drywall. (*Id.*, PageID # 5803-06) For at least two years, he finished walls using the joint compound Bestwall, a Georgia-Pacific product. (*Id.*; D.N. 194-2, PageID # 6580)

In September 2011, Stallings was diagnosed with mesothelioma, an incurable asbestos-related cancer. (D.N. 1-3) He sued Georgia-Pacific, John Crane, Crane Co., Westinghouse (CBS Corporation) and IMO, among others, in Kentucky state court under theories of strict liability and negligence; he also sought punitive damages. (*Id.*) His wife, Carol Lee Stallings, sought damages for loss of consortium. (*Id.*) The action was later removed to this Court under 28 U.S.C. § 1442(a)(1). (D.N. 1) In September 2014, Stallings died as the result of his cancer, leaving his widow, individually and as executrix of his estate, to continue the suit with the addition of a wrongful death claim. (D.N. 91, PageID # 4337)

Remaining defendants Georgia-Pacific, John Crane, Crane Co., Westinghouse (CBS Corporation), and IMO now seek summary judgment. (D.N. 164, 180, 182, 183, 184) John Crane contends that the Court should exclude Captain Lowell's testimony as mere speculation. (D.N. 180-1, PageID # 5785) Though none of the defendants dispute that Stallings was substantially exposed to asbestos while on the USS Waller, they all argue that the plaintiff failed to prove causation with respect to their specific products. (D.N. 164, 180, 182, 183, 184) CBS Corporation also contends that maritime law, not Kentucky law, applies to the plaintiff's claims. (D.N. 183, PageID # 6151) The Court will grant the defendants' motions because the plaintiff failed to prove causation as to each of the remaining defendants.

## II.     SUMMARY JUDGMENT STANDARD

The Court may only grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must review the evidence in a light most favorable to the non-moving party, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.

R. Civ. P. 56(c)(1). Moreover, the non-moving party must establish a genuine issue of material fact with respect to each element of each of her claims. *Celotex*, 477 U.S. at 322-23. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; instead, the non-moving party must present evidence upon which the jury could reasonably find for her. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 252).

### III. DISCUSSION

#### A. Captain Lowell's Testimony

The Court disagrees with John Crane's contention that Captain Lowell's testimony should be excluded as unsupported speculation. Captain Lowell has the experience, educational background, and an adequate basis for his testimony. Under Rule 702, a witness is qualified to testify as an expert in the form of an opinion if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court clarified this rule by requiring district courts to perform a gatekeeping function through a two-step inquiry. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (applying *Daubert*'s general principles to the expert matters discussed in Rule 702). First, the Court must determine "whether the experts' testimony reflects 'scientific knowledge,' whether their findings are 'derived by the scientific method,' and whether their work product amounts to 'good science.'" *Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 303 (6th Cir. 1997) (quoting *Daubert*, 509 U.S. at 590, 593). Second, the Court "must ensure that the proposed expert testimony is

4

relevant to the task at hand." *Id*. (citations omitted). In effect, the second factor examines how the expert's qualifications relate to the subject matter of his testimony. *Id*. (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

Captain Lowell's testimony satisfies *Daubert*'s first prong. John Crane incorrectly argues that Captain Lowell has nothing to back up his testimony. (D.N. 180-1, PageID # 5784) In fact, Captain Lowell reviewed Stallings's deposition and researched records from the Naval Archives. (D.N. 172-1, PageID # 5467) From his Navy career, he is also familiar with plans, designs, and specifications used in the construction and repair of ships like the USS Waller. (*Id*.) This is a sufficiently reliable basis for his testimony. John Crane does not contest whether Captain Lowell is qualified under *Daubert*'s second prong. (D.N. 180-1, PageID # 5785-86)

The Sixth Circuit opinion in *Tamraz v. Lincoln Electric Co*., 620 F.3d 665 (6th Cir. 2010) is particularly instructive here. The *Tamraz* court recognized that Rule 702 does not require anything approaching absolute certainty, and "where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." *Id*. at 671-72. Here, in light of Captain Lowell's reliable basis and uncontested qualifications, the Court sees knowledge. Nevertheless, the limitations of Captain Lowell's opinions prevent the plaintiff from establishing substantial causation.

### B. Choice of Law

CBS Corporation correctly asserts that maritime law, and thus admiralty jurisdiction, applies to plaintiff's claims against John Crane, Crane Co., CBS Corporation, and IMO because the alleged torts occurred on navigable waters. Manufacturing ship parts bears a

"substantial relationship to traditional maritime activity." *Sisson v. Ruby*, 497 U.S. 358, 362 (1990). Admiralty jurisdiction will apply to a case "if it falls within the Court's admiralty jurisdiction, regardless of whether or not the parties actually invoked that jurisdiction." *Donais v. Green Turtle Bay, Inc.*, No. 5:10-CV-167, 2012 U.S. Dist. LEXIS 14534, at *8-10 (W.D. Ky. Feb. 7, 2012) (citations omitted); *see Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953) (if a cause of action is brought under common law but is cognizable in admiralty, admiralty jurisdiction and federal substantive maritime law apply). The Supreme Court articulated a two-part test for admiralty jurisdiction over maritime torts in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). Under that test, a claim "must satisfy conditions both of location and of connection with maritime activity." *Id.* at 534. The connection prong is comprised of two subparts: "(1) 'the general features of the incident involved' could have 'a potentially disruptive impact on maritime commerce,'" and "the 'general character' of the 'activity giving rise to the incident' must bear a 'substantial relationship to traditional maritime activity.'" *Donais*, 2012 U.S. Dist. LEXIS 14534, at *10 (quoting *Sisson*, 497 U.S. at 364); *see Grubart*, 513 U.S. at 534.

Plaintiff's claims meet both prongs of the Supreme Court's test. First, the alleged torts occurred aboard a ship on navigable waters. Second, asbestos on ships could impact maritime commerce; for instance, asbestos on a Navy ship creates "unsafe working conditions that could cause labor shortages due to fear of harmful exposures by crew or potential crew members, which in turn could disrupt the Navy's ability to protect other commercial ships if called upon to do so." *Nelson v. Air & Liquid Sys. Corp.*, No. C14-0162JLR, 2014 U.S. Dist. LEXIS 170394, at *31 (W.D. Wash. Dec. 9, 2014). The Court also finds that manufacturing products for specific use on Navy ships "bear[s] a substantial relationship" to traditional

6

maritime activity. *Donais*, 2012 U.S. Dist. LEXIS 14534, at *8-10. Accordingly, the Court has admiralty jurisdiction over plaintiff's claims against John Crane, Crane Co., CBS Corporation, and IMO, and substantive federal law applies to those claims. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959).

Plaintiff's claims against Georgia-Pacific, however, are still subject to Kentucky common law, as these claims arise out of Stallings's employment as a drywall finisher and bear no relationship to traditional maritime law.

### C. Causation Under Maritime Law

To recover under either a strict liability or a negligence theory, the plaintiff must establish causation. In *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005), the Sixth Circuit articulated the test for causation under maritime law. With respect to each defendant, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Id*. (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). Where a plaintiff "relies on proof of exposure to establish that a product was a substantial factor in causing injury, the plaintiff must show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id*. (internal quotations omitted). Minimal exposure is insufficient. *Id*. It is also insufficient to show that the defendant's product was simply present at the plaintiff's workplace. *Id*. In short, plaintiff must provide proof of substantial exposure for the Court to find that a particular defendant's product was a substantial factor in causing Stallings's injury. *Id*.

### 1. IMO Industries

Plaintiff has failed to produce sufficient evidence that IMO's products were a substantial factor in causing Stallings's illness. IMO's predecessor in interest, DeLaval, supplied equipment, including a turbine, for the construction of the USS Waller in 1941 and 1942. (D.N. 164-2, PageID # 5370) The USS Waller was overhauled at least once and converted into an escort destroyer before Stallings joined the Navy. (*Id.*, PageID # 5370) Stallings did not know whether he encountered IMO packing or gaskets while on the USS Waller. (D.N. 180-2, PageID # 5714) Captain Lowell believes that it was more likely than not that the pumps Stallings worked with and around were manufactured by IMO and that they were intended to be replaced with asbestos-containing packing or gaskets. (D.N. 172-1, PageID # 5479) Stallings also provided a 1954 report indicating that DeLaval parts—including pumps and gaskets—were still present on the USS Waller. (D.N. 172-2, PageID # 5483) Captain Lowell did not, however, know if DeLaval supplied its products with insulation or if the Navy purchased insulation elsewhere. (D.N. 180-9, PageID # 5997) He also testified that the Navy would have replaced the insulation one or more times before Stallings joined the Navy, and he could not say whether DeLaval provided any replacement packing or gaskets. (*Id.*)

A company is not responsible for the asbestos contained in another manufacturer's product. *Lindstrom*, 424 F.3d at 496 (citing *Stark*, 21 F. App'x. at 381). DeLaval's original packing and gaskets were likely replaced at some point, or multiple points, during the fourteen years between when the ship was constructed and when Stallings joined the Navy. There is no evidence that DeLaval provided replacement packing or gaskets. Because IMO cannot be held liable for the asbestos contained in another product and the plaintiff has failed

8

to show that Stallings was exposed to—much less *substantially* exposed to—IMO's products, the evidence is insufficient to create an issue of material fact regarding whether any of IMO's products were a substantial factor in Stallings's illness. The evidence also fails to establish a link between IMO products and the asbestos causing Stallings's illness. The Court will therefore grant summary judgment in favor of IMO.

### 2. Crane Company

Plaintiff has also failed to produce sufficient evidence that Crane Company's products caused Stallings's illness. Plaintiff relies entirely on Captain Lowell's report and deposition to establish Stallings's exposure to Crane's products. (D.N. 194, PageID # 6575) Lowell's report states that "Stallings would have more likely than not worked with or around valves which incorporated asbestos gaskets and packing manufactured by Crane Co.," because Crane was the largest supplier of valves. (D.N. 172-1, PageID # 5474; D.N. 180-9, PageID # 5983) But Lowell's deposition testimony revealed the limited value of this conclusion. For example, Lowell testified that the packing for Crane's valves would likely have been replaced at least once prior to Stallings's arrival, and there is no evidence that Crane supplied the replacement gaskets, packing, or insulation. (D.N. 180-9, PageID # 5983) This limitation on Captain Lowell's opinion is critical because Crane cannot be held liable for the asbestos contained in products it did not manufacture. *Lindstrom*, 424 F.3d at 496. Plaintiff is unable to establish an issue of material fact regarding whether Crane's products were a substantial factor in Stallings's illness. Accordingly, the Court must grant Crane Company's motion for summary judgment.

### 3. John Crane, Inc.

Plaintiff similarly relies on Captain Lowell's report and testimony to prove that John Crane products caused Stallings's illness, but this evidence is likewise insufficient under *Lindstrom*. Captain Lowell concludes that it is more likely than not that over the three-and-a-half years that Stallings was on the USS Waller, he came into contact with asbestos gaskets and packing manufactured by John Crane. (*Id.*, PageID # 5595) However, Lowell also testified that the original packing and gaskets provided with John Crane's equipment were likely replaced and that he does not know whose packing and gaskets were used as replacements. (*Id.*) Again, John Crane is not responsible for asbestos contained in products it did not manufacture. *Lindstrom*, 424 F.3d at 496. The evidence shows that John Crane *may* have provided original valves to the USS Waller, that the packing and gaskets surrounding those valves were *likely* replaced, and that it is unclear who provided the replacements. This is insufficient to create an issue of material fact regarding whether any of John Crane's products were a substantial factor in Stallings's illness. Summary judgment for John Crane is appropriate.

### 4. CBS Corporation (Westinghouse)

The plaintiff failed to show that Westinghouse turbines were a substantial cause of Stallings's illness. Stallings recalled forced draft blower turbines that pushed air into the boiler rooms, but he only recalled actually working on a turbine once. (D.N. 180-2, PageID # 5824; D.N. 180-10, PageID # 6001) Captain Lowell testified that it is more likely than not that Stallings came into contact with a Westinghouse product and that Westinghouse products were originally "designed, supplied, and installed with asbestos containing packing and/or gaskets, and intended to be replaced with asbestos-containing packing and/or gaskets." (D.N.

10

180-10, PageID # 6000; D.N. 172-1, PageID # 5480)  Though Captain Lowell believes that some of the original insulation would have remained in 1955, he did not know if the turbines' manufacturer provided insulation initially, or what company would have replaced the insulation.  (D.N. 180-10, PageID # 6001)

Like its co-defendants, Westinghouse is not responsible for the asbestos contained in another manufacturer's product and so Captain Lowell's limited opinion is insufficient to create an issue of material fact.  *Lindstrom*, 424 F.3d at 496.  Under *Lindstrom*, one instance is insufficient to show substantial exposure for a substantial period of time.  *Id*. at 492.  It is also insufficient simply to show that the turbines were present at the workplace.  The plaintiff must show that Westinghouse turbines were present, that they contained asbestos insulation provided by Westinghouse, and that Stallings had substantial exposure to this asbestos.  At best, plaintiff's evidence shows that Westinghouse turbines *could* have been present on the ship.  Simply put, the evidence fails to establish a link between Westinghouse products and the asbestos causing Stallings's illness.  The Court will grant summary judgment for Westinghouse (CBS Corporation).

### D.  Causation Under Kentucky Common Law

Plaintiff's claims against Georgia-Pacific (GP) are subject to Kentucky common law because the claims arise from Stallings's work with Bestwall and other GP products after his time in the Navy.  The relevant causation standard under Kentucky law is similar to the standard under maritime law: the plaintiff must prove that GP's conduct was a substantial factor in bringing about Stallings's injuries.  *Moeller v. Garlock Sealing Techs., LLC*, 660 F.3d 950, 953 (6th Cir. 2011) (citing *Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980)). "Substantial causation refers to the probable cause, as opposed to a possible cause."  *Id*. at

954. And "one measure of whether an action is a substantial factor is the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." *Id.* (quoting *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009)). In *Moeller*, the plaintiff failed to quantify his exposure to the defendant's products, and he had sustained massive exposure to asbestos from other sources. *Id*. at 955. Consequently, the Sixth Circuit held that there was insufficient evidence to find that the defendant's products "probably, as opposed to possibly, were a substantial cause of [the plaintiff's] mesothelioma." *Id.*

As in *Moeller*, a reasonable jury could not find that Stallings's exposure to Bestwall was a probable cause of his mesothelioma in light of his substantial prior asbestos exposure while in the Navy. Stallings had personal knowledge of using Bestwall when working as a drywall finisher. (D.N. 180-2, PageID # 5802) And Anne Ksionzyk, the corporate representative for GP, believes that Bestwall contained asbestos during this time. (D.N. 194-3, PageID # 6584) Plaintiff's medical experts assert that every exposure to asbestos is a substantial cause of mesothelioma. (D.N. 172-3; D.N. 194, PageID # 6557)

But the Sixth Circuit does not accept the argument that any exposure to asbestos is a substantial cause of mesothelioma. *Martin*, 561 F.3d at 443. The Sixth Circuit has determined that

> this argument would make every incidental exposure to asbestos a substantial factor. Yet one measure of whether an action is a substantial factor is "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." RESTATEMENT (SECOND) OF TORTS § 433(a). The Sixth Circuit responded to a similar argument in a maritime action by stating that an expert's opinion that "every exposure to asbestos, however slight, was a substantial factor" was insufficient because it would render the substantial factor test "meaningless." *Lindstrom*, 424 F.3d at 493.

12

*Id*. Stallings testified that every day that he was in the Navy he breathed dust believed to contain asbestos. (D.N. 184-5, PageID # 6381) Indeed, it is undisputed that Stallings was substantially exposed to asbestos while serving on the USS Waller. (D.N. 164-2, PageID # 5369; D.N. 180-1, PageID # 5776-77; D.N. 183, PageID # 6149; D.N. 184, PageID # 6277; D.N. 194) Dr. Arthur Frank, plaintiff's medical expert, testified that he has "no doubt that in the normal course of business, serving as a boiler tender or boiler operator on a ship, [Stallings] was exposed to asbestos in a manner that could cause his disease." (D.N. 172-4, PageID # 5639) With respect to GP's products, the medical experts can only state that *any* exposure to asbestos qualifies as *substantial* exposure. Such a conclusion fails to satisfy the legal standard. Accordingly, the Court finds that plaintiff has failed to establish a sufficient link between GP products and the asbestos causing Stallings's illness. The Court must grant GP's motion for summary judgment.

## IV.     CONCLUSION

Even construing the evidence in the light most favorable to the plaintiff, no reasonable jury could conclude specifically that asbestos from IMO, Crane Company, John Crane, or CBS Corporation's products was a substantial factor in causing Stallings to develop mesothelioma. Nor could a reasonable jury conclude that Georgia-Pacific's products were a substantial factor in Stallings's illness. Any such finding would be impermissibly conjectural. *See Lindstrom*, 424 F.3d at 492. And because the plaintiff has failed to demonstrate a genuine issue of material fact with respect to the negligence and strict liability claims, the derivative claims—loss of consortium and wrongful death—fail as a matter of law. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

   (1) Defendant IMO Industries, Inc.'s motion for summary judgment (D.N. 164) is **GRANTED**.

   (2) Defendant John Crane, Inc.'s motion for summary judgment (D.N. 180) is **GRANTED.**

   (3) Defendant Georgia-Pacific Corporation's motion for summary judgment (D.N. 182) is **GRANTED**.

   (4) Defendant CBS Corporation's motion for summary judgment (D.N. 183) is **GRANTED**.

   (5) Defendant Crane Company's motion for summary judgment (D.N. 184) is **GRANTED**.

   (6) A separate judgment will issue this date.